# United States Court of Appeals for the Federal Circuit

---

**TEMPO LIGHTING, INC.,**
*Appellant,*

v.

**TIVOLI, LLC,**
*Appellee.*

---

2013-1140

---

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board, in Reexamination No. 95/000,067.

---

Decided: February 10, 2014

---

MATTHEW C. LAPPLE, Lapple IP Law, P.C., of Irvine, California, argued for appellant.

GORDON E. GRAY III, Gray Law Firm, of Long Beach, California, argued for appellee. With him on the brief was CRAIG MCLAUGHLIN, Law Office of Craig McLaughlin, of Costa Mesa, California.

---

Before RADER, *Chief Judge,* MOORE, and WALLACH, *Circuit Judges.*

RADER, *Chief Judge.*

The United States Patent and Trademark Office's (PTO) Patent Trial and Appeal Board (Board) reversed the examiner's rejection of claims 1–3 and 6–13 of U.S. Patent No. 6,554,446 ('446 patent). Tempo Lighting, Inc. (Tempo) appeals that decision. Because the Board's decision lacks the support of substantial evidence in the record and because the Board erred in concluding that Tempo waived certain arguments, this court vacates the decision in-part and remands.

## I.

Tivoli, LLC (Tivoli) owns the '446 patent. The '446 patent relates to a stair-step lighting apparatus that uses a reflective strip of material to alert users to the edge of a step in darkened or low-light environments. '446 patent col. 1 ll. 23–27. Claim 1, for example, recites:

1. A lighting apparatus comprising:

   a first extruded portion shaped to mount on the nose of a stair step; and,

   a second extruded portion coextruded with said first portion and mounted on top of the first portion so as to be above the nose of the stair step, said second portion comprising a material *inert to light* and selected to have a reflectance factor greater than or equal to light gray polyvinyl chloride.

'446 patent col. 3 ll. 9–17 (emphasis added).

Tivoli sued Tempo for patent infringement on February 27, 2004. Tempo later requested inter partes reexamination with the PTO. The PTO granted the request, and the examiner issued the first Office Action in March 2005, rejecting all the claims. Shortly afterwards, the district court stayed the litigation pending the outcome of the

reexamination.  Over eight years later, the district court case remains stayed.

As indicated by the length of the stay, the reexamination progressed slowly.  Tivoli responded to the first Office Action on May 17, 2005, and Tempo filed comments the following month.  However, the PTO took no further action until November 2007, when it issued an order directing Tempo to revise its proposed obviousness rejections.  J.A. 422–26.

Tempo responded in December 2007 with sixty different proposed rejections.  On May 20, 2008, the examiner adopted five of the rejections, but declined to enter the remainder.  J.A. 493–551.  The examiner also construed the "inert to light" limitation present in the disputed claims.  Citing a dictionary, the examiner defined the term as "a material that either does not react, e.g. by degrading, when exposed to light or a material that does not react because it has been treated with or includes some additive, which inhibits degradation of the material when exposed to light."  J.A. 500.

The examiner closed prosecution on May 15, 2009, maintaining the rejections and the construction of "inert to light."  In June 2010, the examiner issued a Right of Appeal Notice.  Tivoli appealed the examiner's rejections, and the parties fully briefed the Board by October 6, 2010.  Tempo's brief included arguments supporting the examiner's rejections, and also included alternative grounds for upholding the examiner's determination using Tivoli's proposed claim construction for "inert to light."  J.A. 905.  Specifically, Tempo asserted that various primary references in the examiner's obviousness rejections anticipated the claims under Tivoli's proposed construction.  *Id.*

The Board issued its decision on February 24, 2012.  The Board first addressed the claim construction for "inert to light."  It rejected the examiner's dictionary definition because Tivoli had defined the term during the

original prosecution of the application that issued as the '446 patent. During original prosecution, Tivoli initially amended the pending claims to include a "non-photoluminescent material." J.A. 1193–1201. The examiner objected to that amendment because the claims "should recite positive limitations to particularly claim and distinctly point out features of the invention." J.A. 1204. In response, Tivoli amended the claims a second time, stating:

> The office action objects to claims 1, 7, 10 and 14 because each claim has the limitation "non-photoluminescent." In response, Claims 1, 7 and 10 have been amended to disclose "a material that is inert to light" as a positive limitation indicating that the material for the second portion is non-photoluminescent and not activated to glow by absorbing ambient light.

J.A. 1216. The examiner allowed these claims, and the application issued as the '446 patent. J.A. 1225. Thus, based on the original prosecution history, the Board held that the proper construction for "inert to light" was "non-photoluminescent and not activated to glow by absorbing ambient light." J.A. 6–9.

The Board then determined that the rejections of claims 1–3 and 6–13 were improper. J.A. 15–17. Although the Board rejected the examiner's construction of "inert to light," it nevertheless relied on the examiner's finding that each of the primary prior art references lacks the "inert to light" limitation. J.A. 16. Finally, the Board concluded that Tempo waived its alternative arguments that certain references anticipate the claims because Tempo did not file a cross-appeal raising those arguments. J.A. 16 n.4.

On March, 26, 2012, Tempo filed a request for rehearing. Tempo argued that the Board erred by relying on the examiner's factual findings which were predicated on a

different construction of "inert to light" than was adopted by the Board.  J.A. 1078–88.  Tempo also reiterated its arguments that the claims are unpatentable under the Board's construction of "inert to light."  *Id.*  The Board denied Tempo's request for rehearing on September 26, 2012.  J.A. 22–27.  The Board did not respond to Tempo's argument that it improperly relied upon the examiner's factual findings under an incorrect claim construction.  *Id.*  The Board instead framed the request as advancing alternative grounds for unpatentability.  J.A. 24.  The Board again concluded that Tempo waived these alternative arguments by not filing a cross-appeal.  J.A. 26.

On appeal, Tempo advances three arguments. Tempo argues that the Board erred in construing "inert to light" differently from the examiner.  Even assuming the Board's construction was correct, Tempo also argues that the Board erred by relying on the examiner's factual findings under a different claim construction.  Finally, Tempo argues that it did not waive its arguments concerning alternative grounds for affirming the examiner's rejections under Tivoli's proposed construction of "inert to light."  This court has jurisdiction under 28 U.S.C. § 1295(a)(4)(A).

## II.

This court reviews the Board's legal conclusions de novo and its factual findings for substantial evidence.  *In re Gartside*, 203 F.3d 1305, 1315–16 (Fed. Cir. 2000).  Claim construction is a question of law.  *In re NTP, Inc.*, 654 F.3d 1268, 1273 (Fed. Cir. 2011).  Anticipation and prior art teachings present questions of fact.  *In re NTP, Inc.*, 654 F.3d 1279, 1297 (Fed. Cir. 2011).  Obviousness is a question of law based on underlying factual findings.  *Id.*  Finally, this court accepts the Board's interpretation of PTO regulations unless that interpretation is "plainly erroneous or inconsistent with the regulation."  *In re Lovin*, 652 F.3d 1349, 1356 (Fed. Cir. 2011).

### III.

Regarding the claim construction dispute, the examiner concluded that "inert to light" referred to "a material that does not react, e.g., by degrading, when exposed to light or a material that does not react because it has been treated with or includes some additive, which inhibits degradation of the material when exposed to light." J.A. 500. The Board found that the examiner erred in construing the claims, and held that the broadest reasonable interpretation of the term "inert to light" is "non-photoluminescent and not activated to glow by absorbing ambient light." J.A. 7. This court sustains the Board's claim construction.

The language of the claims in this case does not contextually define "inert to light." Nor does the specification expressly reference that term. Nonetheless, the intrinsic evidence supports the Board's construction. Specifically, during original examination, Tivoli amended the claims to recite "inert to light." At that time, Tivoli also supplied a meaning for this limitation:

> The office action objects to claims 1, 7, 10 and 14 because each claim has the limitation "non-photoluminescent." In response, Claims 1, 7 and 10 have been *amended to disclose "a material that is inert to light" as a positive limitation indicating that the material for the second portion is non-photoluminescent and not activated to glow by absorbing ambient light.*

J.A. 1216 (emphasis added). In claim construction, this court gives primacy to the language of the claims, followed by the specification. Additionally, the prosecution history, while not literally within the patent document, serves as intrinsic evidence for purposes of claim construction. This remains true in construing patent claims before the PTO. *See In re Morris*, 127 F.3d 1048, 1056 (Fed. Cir. 1997). Here, the prosecution history shows that

Tivoli meant for material that is "inert to light" to be "non-photoluminescent and not activated to glow by absorbing ambient light." This intrinsic evidence supports the Board's decision.

In contrast, the examiner's proposed construction adds multiple limitations that lack support in any form of intrinsic evidence. The intrinsic evidence, for example, contains no reference to the material degrading or not degrading in response to a reaction with light. Similarly the intrinsic evidence makes no reference to additives that would inhibit such a reaction. The examiner instead relied on an extrinsic dictionary definition of "inert." J.A. 499. This extrinsic evidence is not irrelevant, but has relatively little probative value in view of the prevailing intrinsic evidence. In sum, the examiner erred by resorting to extrinsic evidence that was *inconsistent* with the more reliable intrinsic evidence. *Bell Atl. Network Servs. v. Covad Commc'ns Grp.*, 262 F.3d 1258, 1269 (Fed. Cir. 2001) ("[E]xtrinsic evidence may be used only to assist in the proper understanding of the disputed limitation; it may not be used to vary, contradict, expand, or limit the claim language from how it is defined, even by implication, in the specification or file history.").

This court also reads the Board's claim construction with an eye to its consistency and support in the specification. When read in context, the specification and claims as construed by the Board do not present significant concerns that the claims might be invalid under 35 U.S.C. § 112 for lack of written description support (as Tempo contends). Specifically, when read in context, the specification's isolated reference to "capturing" low level light is not reasonably viewed as referring to photoluminescence. '446 patent col. 2 ll. 59–61. And Tempo has not identified any materials in the '446 patent that are photoluminescent. Thus, nothing in the specification is inconsistent with the Board's construction. *Cf. Kennecott Corp. v. Kyocera Int'l, Inc.*, 835 F.2d 1419, 1423 (Fed. Cir. 1987).

Moreover, the Board properly avoided the circularity inherent in any attempt to construe claims with an eye to preserving their validity, a doctrine of "limited utility." *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1328 (Fed. Cir. 2005). Thus, even in the unlikely event that it adopted a construction for "inert to light" that might render the claims invalid under § 112, the Board did not err in reaching that meaning based on the intrinsic evidence. In any event, if the stayed litigation proceeds anew before the District Court, Tempo will have an opportunity to challenge the claims under § 112 at that time.

This court also observes that the PTO is under no obligation to accept a claim construction proffered as a prosecution history disclaimer, which generally only binds the patent owner. However, in this instance, the PTO itself requested Tivoli rewrite the "non-photoluminescent" limitation in positive terms. Tivoli complied, and then supplied clarification about the meaning of the "inert to light" limitation. J.A. 1216. For all these reasons, this court affirms the Board's construction of "inert to light."

## IV.

Having corrected the examiner's claim construction, however, the Board erred by relying on factual findings resting on that incorrect claim construction. In its opinion, the Board states "we agree with Patent Owner that the combination of prior art does not result in a lighting apparatus that is 'inert to light' when the term is properly construed. In this regard, the Examiner expressly found that each of the primary references . . . lacks this claimed feature." J.A. 15–16. The Board's reasoning is deficient. The Board states that the prior art references do not disclose the "inert to light" limitation as properly construed, but only cites to the examiner's findings under the reversed—and substantially different—claim construction. On remand, the PTO will have the opportunity to make new factual findings under the proper construction.

V.

Finally, on remand, the Board will also have the opportunity to consider Tempo's alternative arguments for holding the disputed claims unpatentable. The Board refused to do so because the arguments "contradict[] the Examiner's express findings to the contrary" and Tempo "chose not to cross-appeal the rejections under 35 U.S.C. § 102 over the primary references, which were proposed in the Request for Reexamination and not adopted by the Examiner." J.A. 16 n. 4. The Board's refusal rests on a clearly erroneous interpretation of the PTO's regulations governing appeals.

Third-party requester cross-appeals are governed by 37 C.F.R. § 41.61(b). That regulation states, in relevant part, that "a requester who has not filed a notice of appeal may file a notice of cross appeal *with respect to any final decision favorable to the patentability, including any final determination not to make a proposed rejection*, of any original, proposed amended, or new claim of the patent." 37 C.F.R. § 41.61(b) (emphasis added). Thus, one of the threshold conditions for a cross-appeal is a final decision favorable to patentability. In this case, the examiner rejected all the claims. Thus, the record presented no decision favorable to patentability for Tempo to appeal.

Contrary to the Board's assertion, each of the examiner's determinations against Tempo's proposed rejections is not a distinct decision favorable to patentability necessitating an appeal. The regulation uses the word "including" to clarify that any final determination not to make a proposed rejection is subordinate to, and contained within, the final decision favorable to patentability. The Right of Appeal Notice in this case provided a single final decision concerning the patentability of the disputed claims. J.A. 813–14. The decision was that all the claims are unpatentable, a decision decidedly unfavorable to patentability.

Further, nothing in the regulation or procedure requires Tempo to raise its arguments on cross-appeal. That is, even if the regulation gave Tempo the right to raise these arguments in a cross-appeal, and thus obtain the benefit of additional briefing, the regulation simply says that Tempo "may" do so, not that it must. A Notice of Proposed Rulemaking issued by the PTO supports this conclusion. Streamlined Patent Reexamination Proceeding, 76 Fed. Reg. 22,854, 22,859–60 (April 25, 2011). In that notice, the PTO proposed a rule change prohibiting cross-appeals of non-adopted rejections where all the claims stood rejected on other grounds. *Id.* This change was to avoid duplicative and cumulative briefing (which admits that the same arguments may be raised on direct appeal), and to accord the Office's appeals practice with that of the courts. *Id.*; *cf. Aventis Pharma S.A. v. Hospira, Inc.*, 637 F.3d 1341, 1343 (Fed. Cir. 2011) ("Where, as here, the district court has entered a judgment of invalidity as to all of the asserted claims, there is no basis for a cross-appeal . . . [on] additional claims for invalidity."). Thus, even under Tivoli's theory, the Board's decision is contradicted by this official PTO publication. While the PTO notice is not dispositive, nor binding, it supports the conclusion that the Board erred in construing § 41.61(b).

Finally, where a prevailing party seeks to enlarge its own rights under the judgment or to lessen the rights of its adversary, a cross-appeal generally is needed. *Lazare Kaplan Int'l, Inc. v. Photoscribe Techs., Inc.*, 714 F.3d 1289, 1293 (Fed. Cir. 2013). But where claims have already been adjudicated invalid, a cross-appeal regarding additional invalidity arguments is generally improper. *Aventis*, 637 F.3d at 1343. In this case, Tempo has the right to defend the examiner's final decision on any ground supported by the record. *Rexnord Indus., LLC v. Kappos*, 705 F.3d 1347, 1356 (Fed. Cir. 2013). Throughout the reexamination, Tempo argued that the primary references anticipate the claims under Tivoli's construc-

tion. J.A. 440–47. While Tempo argued in favor of the examiner's construction and rejections, this did not foreclose Tempo from also advancing arguments under the construction proposed by Tivoli. Contrary to the Board's decision, and Tivoli's arguments, Tempo's conduct does not rise to the level of waiver or invoke judicial estoppel. Accordingly, the Board erred by not considering Tempo's additional arguments.

## VI.

In sum, this court affirms the Board's construction of "inert to light." However, the Board's decision reversing the examiner's rejections is vacated. Similarly, the Board's conclusion that Tempo waived certain arguments is also vacated. This court remands to the Board for proceedings consistent with this opinion. As this reexamination has lasted nearly a decade, this court urges the PTO to provide a speedy resolution to this dispute as envisioned under 35 U.S.C. § 314(c).

**AFFIRMED-IN-PART, VACATED-IN-PART AND REMANDED**