NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**IN RE: LAWRENCE B. LOCKWOOD,**
*Appellant*

---

2016-1371

---

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in No. 90/012,671.

---

Decided: February 13, 2017

---

JENNIFER ISHIMOTO, Banie & Ishimoto LLP, Menlo Park, CA, for appellant.

NATHAN K. KELLEY, Office of the Solicitor, United States Patent and Trademark Office, Alexandria, VA, for appellee Michelle K. Lee. Also represented by THOMAS W. KRAUSE, JEREMIAH HELM, MONICA BARNES LATEEF.

---

Before PROST, *Chief Judge,* MOORE, and CHEN, *Circuit Judges.*

CHEN, *Circuit Judge.*

This appeal arises from an ex parte reexamination of U.S. Patent No. 7,010,508. The Patent and Trademark Office's Patent Trial and Appeal Board affirmed the

examiner's determination that certain claims of the '508 patent are unpatentable as anticipated (claims 8–14) or obvious (claim 15). *Ex parte Lockwood*, No. 2015-000143, 2015 WL 1802443 (PTAB Apr. 17, 2015) (*Board Decision*). Patent Owner Lawrence B. Lockwood appeals the Board's decision. Because we agree with the Board that the claimed "stored data" is not limited to data fetched from a remote location and that the prior art Johnson reference discloses "stored data" as properly construed, we *affirm* the Board's decision.

BACKGROUND

The '508 patent issued on May 7, 2006. It comes from a long line of continuation applications that claim priority to May 24, 1984.[1] The patent "relates to terminals used by banking and other financial institutions to make their services available at all hours of the day from various remote locations." '508 patent, 1:22–25.

While the patented invention is claimed broadly, the specification describes the invention in the context of applying for a loan. *See id.* at 1:47–48 ("The principal object of this invention is to provide an economical means for screening loan applications."). The specification explains that "up to 75% of persons applying for loans fail to meet the financial institution qualification criteria." *Id.* at 1:48–50. The invention seeks to streamline the loan application process by weeding out these applicants before they reach a loan officer. It accomplishes this goal by introducing a system of remote terminals in communication with financial institutions and credit rating services

---

[1]    The Board affirmed the examiner's determination that the '508 patent was not, in fact, entitled to the claimed May 24, 1984 priority date. *Board Decision* at *6. Lockwood does not appeal this decision. Appellant's Opening Br. at 4 n.3.

via telecommunication links. *Id.* at 2:27–30. The specification describes the function of the remote terminals as follows:

> Each remote terminal displays the live image of a fictitious loan officer who helps the applicant through an interactive series of questions and answers designed to solicit from the applicant all the information necessary to process his loan application. The terminal can acquire credit rating information about the applicant from the credit reporting bureau and make a decision based on all the information gathered about the credit worthiness of the applicant and the amount of loan to which he is entitled. The loan amount is then communicated to the applicant and to the financial institution for further processing of the loan.

*Id.* at 1:67–2:11.

The PTO instituted ex parte reexamination of claims 1–17 of the '508 patent in response to a request by an anonymous third party. The examiner found claims 1–7, 16, and 17 patentable; claims 8–14 unpatentable as anticipated by Johnson[2]; and claim 15 unpatentable as obvious in view of Johnson in combination with AIC[3]. Lockwood appealed the examiner's decision with respect to claims 8–15 to the Board.

---

[2]    Harold E. Johnson, Jr. and Piero P. Bonissone, *Expert System for Diesel Electric Locomotive Repair*, 1 JOURNAL OF FORTH APPLICATION AND RESEARCH 1, Sept. 1983, at 7.

[3]    *Principles of Rule-Based Expert Systems*, *in* 22 ADVANCES IN COMPUTERS, 163 (Marshall C. Yovits ed. 1983).

The Board affirmed the examiner's decision. The Board's analysis focused on claim 8, the lone independent claim at issue in the appeal:

> 8. An automated multimedia system for data processing for delivering information on request to at least one user, which comprises:
>
>> at least one computerized station;
>>
>> means for accepting and processing an user's entry according to backward-chaining and forward-chaining sequences, including:
>>
>> *means for analyzing and for combining an user's entry with a set of stored data*, and
>>
>> means, responsive to said means for analyzing and for combining, for formulating a query and outputting said query to said user; and
>>
>> means for delivering information to said user.

'508 patent, 7:47–59 (emphasis added). More specifically, the Board's analysis focused on the "a set of stored data" language of the limitation emphasized above. The Board rejected Lockwood's argument that the claimed "a set of stored data" should be narrowly construed to mean "data accessed from a remote location." *Board Decision* at *8. It instead agreed with the examiner that "a set of stored data" should be broadly construed to "read[] on *any* data in *any* location (e.g., local data, remote data, or data located somewhere in between)." *Id.* Based on its construction, the Board affirmed the examiner's anticipation and obviousness rejections.

Lockwood filed a Request for Rehearing before the Board. He argued that the Board erred by refusing to consider the '508 patent's prosecution history when it

rendered its claim construction. While the Board seemed to doubt that it was required to consider a patent's prosecution history when construing claims in a reexamination proceeding, it nonetheless reevaluated the claim term "a set of stored data" in view of the '508 patent's prosecution history and maintained its original construction. J.A. 10.

Lockwood now appeals the Board's decision. We have jurisdiction under 28 U.S.C. § 1295(a)(4)(A).

DISCUSSION

Lockwood appeals both the Board's claim construction of "a set of stored data" and its factual findings with respect to the prior art Johnson reference. We address each issue in turn.

I. Claim Construction

We apply the framework established in *Teva Pharmaceuticals U.S.A., Inc. v. Sandoz, Inc.*, 135 S. Ct. 831 (2015), when reviewing a claim construction adopted by the Board. *Microsoft Corp. v. Proxyconn, Inc.*, 789 F.3d 1292, 1297 (Fed. Cir. 2015). Under that framework, claim construction is reviewed de novo with any underlying factual determinations reviewed for substantial evidence. *Id.* (citing *Teva*, 135 S. Ct. at 841–42).

Before the Board, Lockwood's claim construction argument focused on the term "a set of stored data" rather than the full limitation "means for analyzing and for combining an user's entry with a set of stored data." On appeal to us, however, Lockwood asserts that "the Board erred in not performing a proper means-plus function analysis [of the full limitation] . . . and failed to limit the claim term in dispute to the algorithms disclosed in the specification (and equivalents thereof)." Appellant's Opening Br. at 9.

We find Lockwood's argument misplaced. Lockwood does not dispute that the examiner performed a "means-

plus-function analysis" when he analyzed the claims. *See id.* at 21 n.5; *see also* J.A. 5829–30 ("The structure corresponding to such function . . . as best understood, is interpreted to be a processor onsite/of the computerized station which is run/programmed/implemented by software to automatically analyze . . . and combine a user's entry with a set of stored data, and equivalents thereof." (emphases omitted)). In affirming the examiner's rejection of claims 8–15, the Board did not introduce its own construction. Rather, it adopted the examiner's means-plus-function construction. *Board Decision* at *9 ("[W]e are not persuaded the Examiner's broader interpretation is overly broad, unreasonable, or inconsistent with [the] '508 patent [s]pecification.").

That the Board focused its analysis on the "a set of stored data" language within the larger limitation is unsurprising. When Lockwood appealed the examiner's unpatentability finding to the Board, he directed his claim construction arguments to the term "stored data" alone. *See* J.A. 11242 ("At least the claim term 'stored data' in the claim feature 'means for analyzing and for combining an user's entry with a set of stored data' is required to be construed."); *see also* Appellant's Opening Br. at 9–10 ("The central issue in the reexamination was whether or not the 'stored data' within this claim could be 'any type of data in any location' (as found by the Board) or whether it was limited to 'data fetched from a remote location' as advocated by Appellant."). He consistently argued that the examiner's construction was overbroad and that the Board should narrowly construe "stored data" to mean "data accessed from a remote location." *See, e.g.*, J.A. 11245 ("Proper interpretation of the term 'means for analyzing and for combining an user's entry with a set of stored data,' requires interpretation of the term 'set of stored data' to mean data accessed from a remote location."); J.A. 11246 ("Patent Owner was his own lexicographer for 'stored data' showing the term meant data

accessed from a remote location . . . .").[4]  The Board found otherwise.   In reaching its conclusion, the Board was entitled to focus on the portion of the claim limitation at issue between the parties, rather than expending time and resources on those parts of the examiner's construction that were not in dispute.  We thus reject Lockwood's attempt to reframe the argument he raised below to suggest that the Board failed to address an issue that Lockwood never actually raised.

Lockwood next argues that the Board erred as a matter of law by failing to consider the '508 patent's prosecution history when construing the claims.  We find this argument to be without merit.  In its initial decision, the Board did "decline to consider the prosecution history" under the mistaken belief that the prosecution history from the original examination is irrelevant to claim construction in reexamination proceedings.  *Board Decision* at *8 n.6.  However, when Lockwood presented the Board with our decision in *Microsoft Corp. v. Proxyconn, Inc.*, 789 F.3d 1292 (Fed. Cir. 2015), the Board ultimately did "consult[] the '508 patent's prosecution history (including the reexamination files)."  J.A. 10 (emphases omitted).  While the Board ultimately refused to alter its claim construction in view of the prosecution history, it did consider the prosecution history.

Finally, Lockwood argues that the Board misconstrued "stored data," repeating the argument it made to the Board that the term should be narrowly construed to

---

[4]    Lockwood's arguments to us likewise focus on the claim term "stored data," not the larger "means" limitation.  *See e.g.*, Appellant's Reply Br. at 7 ("*This case turns on whether the 'stored data' of claim 8 must be construed to contain data fetched from a remote location*, and the underlying structure of the claim is a terminal equipped to communicate over a network." (emphasis added)).

mean data accessed from a remote location. Lockwood cites portions of the '508 patent specification in which certain data is stored at financial institutions and credit rating services remote from the terminal. *See* Appellant's Opening Br. at 22–24 (citing '508 patent, 2:27–30 and 3:27–33, among others). Lockwood further contends that he disavowed any construction of "stored data" that included locally stored data during prosecution of the original claims of the '508 patent.

We disagree. Nothing in the plain language of claim 8 requires that the "stored data" be accessed from a remote location. The claim on its face reads on data stored remotely or locally. In this way, claim 8 stands apart from other claims upheld as patentable by the examiner. Those claims expressly require access to remotely stored data. *See, e.g.*, '508 patent, 7:1–3 (claim 1: "means for receiving data comprising operator-selected information and orders from said installation via said means for communicating"); *id.* at 8:61 (claim 17: "means for receiving data from said installation").

Further, the specification lacks a definition of "stored data." It includes non-limiting examples of "stored data" that reside remote from the terminal (e.g., financial institutions, credit rating services). Moreover, the specification makes clear that the information transmitted from the financial institutions and credit rating services to the terminal is stored in a local RAM before that information is used by the terminal. *See* '508 patent, 3:48–51 ("Thus, the RAM memory can be used to hold data obtained from the loan rate files 109 at the financial institution as well as applicant's financial profiles obtained from the credit rating service 103."); *see also id.* at 4:28–30 ("The terminal goes into a standby mode with its DMA unit 116 waiting for a transfer of information from the line into the RAM memory 117."). The '508 patent's Figure 5 shows that the information is read from the local memory—not accessed from a remote location—when it is used by the terminal:



Taken together, the plain language of claim 8 and the description in the '508 patent specification confirm that "stored data" should be read broadly to encompass both data stored remotely and locally. As such, the Board properly chose not to adopt the contrary opinion of Lockwood's expert.

Lockwood's arguments with respect to the prosecution history are likewise unavailing. "To constitute disclaimer, there must be a clear and unmistakable disclaimer." *Thorner v. Sony Computer Entm't Am. LLC*, 669 F.3d 1362, 1366–67 (Fed. Cir. 2012). Then-applicant Lockwood's statements to the PTO contain words like "may" and "for example." J.A. 162 ("Information processed by means of one of the terminals 105 *may* be stored then retrieved as, *for example*, a loan quotation." (emphases added)). They are not the "clear and unmistakable" statements necessary for disclaimer.

Lockwood's statements during reexamination fare no better. Lockwood certainly proposed a narrow claim construction to the Board. But the Board is not obligated to treat a patent owner's claim construction arguments on appeal as prosecution history disclaimer. *See Tempo Lighting, Inc. v. Tivoli, LLC*, 742 F.3d 973, 978 (Fed. Cir. 2014) ("This court also observes that the PTO is under no obligation to accept a claim construction proffered as a

prosecution history disclaimer, which generally only binds the patent owner.").

And, Board statements from an earlier appeal are simply too ambiguous to find disclaimer. The Board upheld an examiner's rejection of claim 8 (as originally drafted) as obvious over another Lockwood patent. J.A. 260. As part of its analysis, the Board stated that it understood the claimed "means for combining a user's entry with a set of stored data" "as disclosed and argued . . . refer[red] to employing both a user's keyed input and data stored in the central processor in order to control various means responsive to both of these items." J.A. 259–60. While this statement suggests that then-applicant Lockwood argued that stored data included remotely stored data in the form of "data stored in the central processor," nothing in the statement or other citations provided by Lockwood demonstrates disclaimer of locally-stored data.

We therefore affirm the Board's construction of "a set of stored data" to include data stored locally to the terminal.[5]

## II. PATENTABILITY

The Board affirmed the examiner's finding that independent claim 8 was anticipated by Johnson. *Board*

---

[5] While Lockwood mentions in his opening brief that his petition to have an amendment entered after final rejection was denied, we do not read his brief as including a challenge to that petition decision. Even if Lockwood had included such a challenge, we would be without jurisdiction to consider that petition in this appeal. *See In re Berger*, 279 F.3d 975, 984 (Fed. Cir. 2002).

*Decision* at \*9.[6]   Anticipation is a question of fact, *In re Hyatt*, 211 F.3d 1367, 1371 (Fed. Cir. 2000), which we review for substantial evidence, *In re Gartside*, 203 F.3d 1305, 1315 (Fed. Cir. 2000).

Lockwood presents multiple arguments why—even under the Board's construction of "a set of stored data"— the Johnson prior art reference does not disclose all limitations of independent claim 8.  But Lockwood failed to raise most of these arguments to the Board.  Except for the question of whether Johnson's "rules" are "stored data," Lockwood's arguments with respect to patentability are therefore waived.  *See In re Baxter Int'l, Inc.*, 678 F.3d 1357, 1362 (Fed. Cir. 2012) ("[W]e generally do not consider arguments that the applicant failed to present to the Board."); *Johns Hopkins Univ. v. Cellpro, Inc.*, 152 F.3d 1342, 1362 (Fed. Cir. 1998) ("As a general rule, an appellate court will not hear on appeal issues that were not clearly raised in the proceedings below.").

Lockwood's sole remaining argument—i.e., that Johnson's "rules" are not "stored data"—misses the mark. Johnson makes clear that its "[r]ule-based expert systems *consist of a body of knowledge (knowledge base)* and a mechanism (inference engine) for interpreting this knowledge." J.A. 917 (emphasis added).  Johnson further explains that "[t]he body of knowledge is divided into *facts* about the problem, and heuristics or *rules* that control the use of knowledge to solve problems in a particular domain."  *Id.*; *see also* J.A. 918 ("[The inference engine's] task is to monitor the facts in the data base and execute the action part of those rules that have their situation part satisfied."); *id.* ("An associative information table provides additional facts, such as unit standard features,

---

[6]   Lockwood concedes that "the rejections of claims 9–15 stand or fall with claim 8."  Appellant's Opening Br. at 9.

unit history of failures, model failure propensity, etc."). It is the "facts" in the "knowledge base," not the "rules" themselves, that satisfy the "stored data" limitation. *See* J.A. 5831–32. The Board's anticipation finding is therefore supported by substantial evidence.

## CONCLUSION

For the foregoing reasons, we *affirm* the Board's decision that claims 8–15 of the '508 patent are unpatentable.

## **AFFIRMED**

## COSTS

No costs.