# United States Court of Appeals
# for the Federal Circuit

---

**CIENA CORPORATION,**
*Appellant*

**v.**

**OYSTER OPTICS, LLC,**
*Appellee*

**ANDREI IANCU, UNDER SECRETARY OF
COMMERCE FOR INTELLECTUAL PROPERTY
AND DIRECTOR OF THE UNITED STATES
PATENT AND TRADEMARK OFFICE,**
*Intervenor*

---

2019-2117

---

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in No. IPR2018-00070.

---

NONPRECEDENTIAL ORDER ISSUED: January 28, 2020
PRECEDENTIAL ORDER ISSUED: May 5, 2020*

---

\*     This order is being issued as a precedential order pursuant to a request filed by the U.S. Patent and Trademark Office under Fed. Cir. R. 32.1(e).

---

## ON MOTION

---

JOSEPH PALYS, Paul Hastings LLP, Washington, DC, for appellant.  Also represented by IGOR VICTOR TIMOFEYEV, ANDERSON TO.

WAYNE MICHAEL HELGE, Davidson Berquist Jackson & Gowdey, LLP, McLean, VA, for appellee.  Also represented by JAMES THOMAS WILSON, ALDO NOTO.

MOLLY R. SILFEN, Office of the Solicitor, United States Patent and Trademark Office, Alexandria, VA, for intervenor.  Also represented by THOMAS W. KRAUSE, FARHEENA YASMEEN RASHEED, MAUREEN DONOVAN QUELER.

---

Before MOORE, O'MALLEY, and STOLL, *Circuit Judges*.

O'MALLEY, *Circuit Judge*.

### O R D E R

Ciena Corporation ("Ciena") moves to vacate and remand for further proceedings in light of *Arthrex, Inc. v. Smith & Nephew, Inc.*, 941 F.3d 1320 (Fed. Cir. 2019).  Oyster Optics, LLC ("Oyster") and the Director of the United States Patent and Trademark Office oppose the motion.  For the reasons explained here, the motion is DENIED.

Oyster owns U.S. Patent No. 8,913,898 ("the '898 patent").  In 2016, Oyster filed suit in district court, alleging that Ciena infringed several patents, including the '898 patent.  Ciena petitioned the Patent Trial and Appeal Board ("Board") for *inter partes* review of the asserted patents.  At Ciena's request, the district court stayed the litigation.  In May 2018, the Board instituted review proceedings on the '898 patent.  After conducting proceedings, the Board

issued a final written decision in May 2019, concluding that Ciena had failed to demonstrate by a preponderance of the evidence that any of the challenged claims were unpatentable. Ciena then filed this appeal.

Ciena argues that, under *Arthrex*, the Board's decision must be vacated and remanded for a new hearing before a differently constituted panel because the members of the Board panel that issued the decision were not appointed in compliance with the Appointments Clause. The problem with Ciena's request is that, unlike the patent owner in *Arthrex*, Ciena requested that the Board adjudicate its petition. It, thus, affirmatively sought a ruling from the Board members, regardless of how they were appointed. Ciena was content to have the assigned Board judges adjudicate its invalidity challenges until the Board ruled against it. Under those circumstances, we find that Ciena has forfeited its Appointments Clause challenge.

The Supreme Court cases cited by Ciena do not compel a different conclusion. Ciena primarily relies on *Commodity Futures Trading Commission v. Schor*, 478 U.S. 833 (1986). In that case, Schor invoked the Commodity Futures Trading Commission's ("CFTC's") reparations jurisdiction by filing complaints against his broker, while the broker filed a competing lawsuit in federal district court against Schor. Schor moved to stay or dismiss the district court action, arguing that the agency action would fully resolve and adjudicate all the rights of the parties. The broker subsequently dropped the civil suit and filed a counterclaim at the agency. After the agency ruled against Schor, Schor argued that the agency's adjudication of the counterclaim violated Article III of the Constitution.

Under those circumstances, the Court held that "Schor indisputably waived any right he may have possessed" to having the matter adjudicated in an Article III court. *Id.* at 849. The Court explained that "Schor expressly demanded that [the broker] proceed on its counterclaim in the

reparations proceeding rather than before the District Court." *Id.* And like Ciena here, the Court explained that Schor "was content to have the entire dispute settled in the forum he had selected until the ALJ ruled against him on all counts; it was only after the ALJ rendered a decision to which he objected that Schor raised any challenge to the CFTC's consideration of" the counterclaim. *Id.*

Despite its finding of waiver, the Court nonetheless addressed whether the Executive Branch tribunal's handling of Schor's claims violated Article III. It explained that it was doing so because "[t]o the extent that [a] structural principle [regarding the separation of powers] is implicated in a given case," "notions of consent and waiver cannot be dispositive because the limitations serve institutional interests that the parties cannot be expected to protect." *Id.* at 851. After assessing the potential structural issue it identified, the Court concluded that, where a decision to invoke a forum is freely made by the complaining party, "separation of powers concerns are diminished." *Id.* at 855. The Court then found that Schor's consent to having the CFTC adjudicate the matters it put to it—particularly while eschewing the very Article III forum to which he claimed entitlement—was sufficient to allow the Court to find that no structural concern regarding the integrity of the judiciary was actually implicated. *Id.*

The Court again forgave waiver because of potential structural concerns regarding separation of powers in *Freytag v. Commissioner*, 501 U.S. 868 (1991). There, the petitioners sought review in the United States Tax Court and consented to having a special trial judge preside over their case. On appeal, the Fifth Circuit held that the petitioners had waived any constitutional challenge to the appointment of the special trial judge by their consent and by failing to raise the challenge in the Tax Court. *Id.* at 872. The Supreme Court agreed that waiver had occurred, but nonetheless decided to take up the Appointments Clause challenge. It first agreed that Appointments Clause challenges

are non-jurisdictional, and thus, waivable. *Id.* at 878–79. The Court noted, however, that it had included "Appointments Clause objections to judicial officers in the category of" structural separation of powers issues it had previously exercised its discretion to consider even if not preserved below. *Id.* The Court concluded that "this is one of those rare cases in which we should exercise our discretion to hear petitioners' challenge to the constitutional authority of the Special Trial Judge." *Id.* at 879.

Proceeding once more to scrutinize the structural question it identified, again, the Court found that no separation of powers concern actually was implicated. *Id.* at 891–92. It based that conclusion on the fact that the Tax Court is a "Court[] of Law[,]" exercising "its judicial power in much the same way as the federal district courts exercise theirs[,]" and being subject to review by the courts of appeals "in the same manner and to the same extent" as district courts. *Id.* at 891. Given those conclusions, the Court found the appointment of tax court judges by the chief judge to be constitutional because the Tax Court was "independent of the Executive and Legislative Branches." *Id.*

Importantly, while the Court did consider the Appointments Clause challenge before it based on possible "structural concerns," it did not answer the question of whether "a party's consent to have its case heard by a special tax judge constitute[s] a waiver of any right to challenge the appointment of that judge on the basis of the Appointments Clause." *Id.* at 893 (Scalia, J., concurring in part and concurring in the judgment). And, it did not tell us whether lower courts must always forgive waiver where a structural constitutional deficiency under the Appointments Clause is alleged.

Relying on *Schor* and *Freytag*, Ciena argues that this court must consider its objection to the authority of the panel members who decided its case and set aside their decision because structural interests justify forgiving Ciena's

clear waiver.  There are several problems with Ciena's request.

First, while we agree that courts of appeals may forgive waiver or forfeiture of claims that implicate structural constitutional concerns, we do not believe we are always bound to do so.  Neither *Schor* nor *Freytag* compel such a conclusion.  Indeed, the Court in *Freytag* not only said it was exercising its "discretion" to consider the otherwise waived constitutional challenge; it said that exercising such discretion should only occur in "rare" circumstances.  501 U.S. at 879.  In *Arthrex*, we considered the Appointments Clause challenge presented not only because of the structural nature of the challenge, but because of its importance to litigants, and, importantly, because we had not considered the question previously.  *Arthrex*, 941 F.3d at 1326–27.  We did not say we had no choice but to consider the issue.

While the presence of a structural separation of powers issue can justify considering a matter in the face of a clear waiver or forfeiture, it does not compel it.  In *Freytag*, the Supreme Court did not say that the Fifth Circuit erred in refusing to address the Appointments Clause challenge in that case; it only said that it would exercise its own discretion to do so.  *Freytag*, 501 U.S. at 879.  The Supreme Court clearly explained the interaction between forfeiture and assertions of structural constitutional defects in *Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211, 231 (1995).  The Court made clear both (1) that "the proposition that legal defenses based upon doctrines central to the courts' structural independence can never be waived simply does not accord with our cases" and (2) that what follows from a conclusion that a structural constitutional principle has been violated in a given case "is not that waivers of res judicata are always impermissible, but rather that . . . waivers of res judicata need not always be accepted."  *Id.* (citing *Schor*, 478 U.S. at 849, 851; *Freytag*, 501 U.S. at 878–879; *Coleman v. Ramada Hotel Operating Co.*, 933 F.2d 470, 475 (7th Cir. 1991); *In re Medomak Canning*, 922 F.2d 895, 904

(1st Cir. 1990); *Holloway Constr. Co. v. U.S. Dept. of Labor,* 891 F.2d 1211, 1212 (6th Cir. 1989)).

Understanding that it is a discretionary decision to forgive waivers of non-jurisdictional challenges comports with our conclusion in *Customedia Technologies, LLC v. Dish Network Corp.*, 941 F.3d 1173 (Fed. Cir. 2019), where, after *Arthrex*, we held that the type of constitutional challenge at issue in both *Arthrex* and here is subject to forfeiture. And it explains the many same holdings by our sister circuits post-*Freytag*. *See, e.g.*, *Island Creek Coal Co. v. Wilkerson*, 910 F.3d 254, 256 (6th Cir. 2018); *Turner Bros. v. Conley*, 757 F. App'x 697, 699–700 (10th Cir. 2018); *NLRB v. RELCO Locomotives, Inc.*, 734 F.3d 764, 798 (8th Cir. 2013). Having forgiven forfeiture in *Arthrex* to consider a structural challenge that presented an important case of first impression in this Circuit, we remain free to exercise our discretion to impose standard principles of waiver in other cases raising the same challenge. *See United States v. Booker*, 543 U.S. 220, 268 (2005) ("[W]e expect reviewing courts to apply ordinary prudential doctrines," including those relating to waiver, even in cases involving constitutional challenges).

Second, even if we chose to consider Ciena's structural challenge, its consent to the jurisdiction of the Board would most certainly doom it. As in *Schor*, Ciena had a valid alternative forum in which it could have challenged Oyster's patent claims—the district court. In district court, there would be no question that the matter would be adjudicated by a properly appointed judicial officer. But, like Schor, Ciena asked the Board to address its challenge. Where the decision to invoke a forum "is left entirely to the parties," "separation of powers concerns are diminished." *Schor*, 478 U.S. at 855. "Leaning heavily on the importance of Schor's consent, the Court [in *Schor*] found no structural concern implicated by the CFTC's adjudication of the counterclaims against him." *Wellness Int'l Network, Ltd. v. Sharif*, 135 S. Ct. 1932, 1943 (2015).

The Supreme Court has "reiterated the importance of consent to the constitutional analysis" of separation of powers concerns on more than one occasion since *Schor. Id.* at 1943. In *Wellness,* the Court considered whether bankruptcy court judges were constitutionally permitted to determine claims that they are otherwise not authorized to consider by virtue of the Supreme Court's earlier decision in *Stern v. Marshall,* 564 U.S. 462 (2011) (holding that bankruptcy courts, as non-Article III forums, cannot issue final decisions on state common law counterclaims). *Where the party challenging the ruling consented to adjudication by the bankruptcy court,* the Court determined that they can; it concluded that no constitutional concerns exist where a party consents to a particular form of adjudication. *Wellness,* 135 S. Ct. at 1945 n.10, 1947; *see also Peretz v. United States,* 501 U.S. 923, 932, 937 (1991) (defendant's consent to supervision of voir dire by Magistrate Judge—which is otherwise unconstitutional—"significantly changes the constitutional analysis" and negates implication of structural constitutional concerns).

In this case, Ciena not only consented to adjudication by the Board, but it affirmatively sought to delay any consideration of its patent challenges by seeking a stay of the district court litigation initiated by Oyster. Any constitutional concern regarding the appointment of the Board judges in this case is negated by Ciena's forfeiture.

## CONCLUSION

For these reasons, we decline to take up Ciena's Appointments Clause challenge. Its motion is DENIED.